at all. Arguments not to exceed 15 minutes per side. Ms. Mintz, you may proceed to the appellant. Good afternoon. Good afternoon, and may it please the court, Leia Mintz for the appellant, Ammex Inc. And as your Honor said, I would like to reserve three minutes for rebuttal. Very well. Congress has declared that duty-free stores can sell any merchandise subject to duty of every description. This case should begin and end with that unambiguous language. Under the statute's clear terms, Ammex is allowed to sell duty-free gasoline of every description without limitation, including gasoline that has an RVP over seven. Yet Director If that were legal in Canada, which I believe it is, that we would be allowed to sell that gasoline. The only limitations are those that are present in the statute. Those limitations include the item has to be dutiable, it can't be perishable, and it can't be an explosive other than a firecracker. And then there are additional restrictions that Ammex has to So in this case, Ammex could sell 10.0 gasoline, assuming that's legal for use in Canada. Last I checked, the limit in the summer would be 10.5, and there's no limit in the winter in Canada. So in that circumstance, yes, your Honor, Ammex could sell that gasoline. So merchandise that is illegal in Canada cannot be sold at your Ammex store? That's correct. You agree? Okay. But items that are illegal in Michigan, you say can be sold at your store as long as they're not illegal in Canada? No, your Honor. There's a distinction between items that can't be used in a specific eight county jurisdiction for three months out of the year versus items that are illegal per se. So have to be subject to duty. For example, heroin could not be subject to duty because if we tried to declare that we were bringing heroin into the United States, U.S. Customs would seize that. We're not saying that we can sell anything that might be legal in Canada, let's say, if heroin were legal in Canada. What we are saying is that anything that is not per se illegal, such that it would be seized upon arriving at the borders of the United States, we can sell duty-free as long as it's also not a perishable and not an explosive other than a firecracker. And you sell prescription drugs? Well, prescription drugs are listed as a controlled substance, especially if it were, like, say, a controlled substance that's a drug, we would not be able to sell those, assuming Customs does not allow it and they would be contraband or subject to forfeiture. And there are specific limits. For example, if your Honours look at Title 19-1595A, that has a whole list of examples of the types of goods that would be seized and can't be imported. For example, controlled substances, anything that's smuggled or stolen, anything that's a trademark violation, those types of limits, we are not contesting here. What we are contesting is MDARD's ability to directly regulate- Counsel, is that found in a regulation or a statute? No, 1595A is a statute. So it's 19 U.S.C. 1595A. And those other limitations are in 1557 A1 of Title 19, the subject to duty, not perishable, and not an explosive other than a firecracker. You're talking about when things are imported into the United States, whether they would be illegal or not. I mean, what if the merchandise is made in the United States? So there's no import into the United States, but it's produced here. Well, Your Honour, we don't- What are the rules for that? What are the rules for that? We don't sell anything that comes through domestic commerce. The whole construction of a duty-free store is that it's a good that is imported solely for exportation. So Amex could not go to the local distributor of books, buy a whole bunch of books and try to sell them duty-free. You can't sell Kentucky whiskey at the duty-free store? It would have to come from an outside source, from a source that is outside the United States in order to import it. You would have to sell to a foreign source, and then the foreign source would have to come back and sell it to you, and then it'd be all right? Well, I'm not sure if there's any way to create Kentucky whiskey, for example, that has no duties ever imposed on it, which is one of the limitations. So I'm not sure, Your Honour, on that specific example, but generally anything that Amex sells through its duty-free store has to come from an outside duty-free source and never have duties imposed upon it. And that's the only way Amex can maintain this structure of having a duty-free system where taxes are never imposed and the goods never enter the domestic market. And that's the key here. The limitations are on... Let me challenge you on that. You say the goods never enter the American market, but what about the fumes from the goods? I mean, they entered the American market, don't they? Well, Your Honour, in this case, we have specifically pleaded that there is a de minimis impact on the environment from Amex. Where do you get that? Do you have expert testimony that says its de minimis has no effect on the environment in southeastern Michigan? We don't at the moment in our complaint. Okay, so you have no support for your statement? Well, we're here on a 12B6, Your Honour, so our obligation is to complain. We have to find out if it's plausible, that either under Trombley, it has to be a plausible obligation. You just can't make up things. Right, and we do have an expert or a report that was part of the record on the preliminary injunction about the gasoline that on average is used when a car drives from the bridge into Canada. And we also have... There are numbers of limitations. For example, there's fuel recapture when a truck delivers gasoline into an underground tank. And there's no dispute that Amex follows all of those laws with the type of technology that must be used on the truck. And MDAR does not regulate the type of mechanism, the technology that's used to keep fumes from a pump into a car. Those are not issues that are really before this court because there's no doubt that either Amex either complies with them or MDAR doesn't regulate them. And on the specific issue of driving from the gas station to the Canadian border, the only evidence in this record is that on average, there is no impact because the gasoline that is in the lines at the time is gasoline that was already purchased elsewhere in Michigan, not the specific fueling at the Amex tank. So it is plausible, Your Honor, that the impact from Amex's gasoline is de minimis on the Michigan environment and therefore the gasoline is sold for export. And that is the whole construct of a duty-free store, that the goods are sold for use in Canada. That's part of the statutory scheme. That's also part of the regulations that US Customs has promulgated that specifically say the goods are for use in Canada. So given that factual background, the gasoline that Amex sells is for Canada. Its impact is not in Michigan. And on these facts and pleadings, that's where this court has to come and interpret those facts as true, at least at this stage. And that's what we're asking. Can we go back to your point about having to comply with Canadian law? What is the basis for that? Is there a statute saying that the bonded warehouse has to, or Customs-free store has to comply with the foreign law to where good is going? Yes, Your Honor. So I would point, Your Honor, to 19 U.S.C. 1555 and subsection B. And there are whole limits there about the types of labeling requirements that have to be used and what Amex or any other duty store must display. And of those limits in B3 and subsection C, it is a requirement that Amex notify customers that the goods are subject to Customs law and any regulation of a foreign country to which the goods are taken. And that's repeated. I'm sorry, Judge White? It doesn't say it has to comply with the law of Canada? Well, by requiring us to post that, it is both a recognition that the goods would have to comply. And if Your Honor thinks practically about it, if we were selling something that were illegal in Canada, someone drives... But counsel, as a practical matter, you're forced to comply because you have to give notice. But that doesn't mean that the law requires you to only sell things that are illegal in Canada. Well, it does, Your Honor, because if we sold something and everyone who bought anything at the Amex store was arrested at the Canadian border, that I'm sure Canada would have something to say to U.S. Customs about it. Well, let me just ask you this, counsel. Suppose the EPA equivalent in Canada determined that this gas you were selling did not comply with Canadian environmental rules. Would a Canadian official have the ability to come to Amex and investigate and impose fines for not complying with Canadian law? Well, I'm not sure the precise mechanism, but if our goods were not legal for sale in Canada, we would not be able to sell them into Canada. We have to represent accurately that the goods are subject to the laws in Canada and do comply with those laws. And in that circumstance, if our gasoline was not legal in Canada, we would not be selling it into the Canadian market. Is your Amex store in the city of Detroit subject to Michigan law? It's subject to Michigan law for aspects that don't have to do with the goods that are being sold. So we take no, we're not contesting that we have to comply with OSHA or other kinds of. OK, other other things. I mean, you're subject to the jurisdiction. So, I mean, if there was a murder that occurred in your store, you would be subject to jurisdiction of the state of Michigan and the criminal courts, right? Correct. What if your warehouse is storing contraband? Say it is storing heroin. Could you be prosecuted for storing heroin in your warehouse? Well, that would be a violation of federal law as well. So we're dealing with federal law here. That's what the Michigan summer gas rules are. Right. Yes, Your Honor. And yes, we could be prosecuted if we were holding heroin, because that's not a good that's subject to the exceptions in 1557A. Heroin would be contraband and it would be a controlled substance and we could not sell it. We could not possess it. And that's really not what this case is about. The case is about a good that is legal in general in the United States. It just can't be used. The specifics of it is not legal in southeastern Michigan in the summertime. And that's that's what the argument is. It's it's illegal to dispense it where you're dispensing it. And well, it's the good itself is not illegal, Your Honor, if I may. There's no good in general, the good gasoline in general. Gasoline, but even a driver could fill up outside the eight county area, drive into the eight county area and would not have committed any crime. So it's not that the good is illegal. It's that Michigan is attempting to directly regulate a sale of a good. And that has to do with that imposes on the U.S. custom statute in this case. So is it correct that your argument is basically that you have a statute that permits you to sell, in effect, anything that is dutiable, which translates really to being legally brought in or sold with two very narrow exceptions? And because the regulation is a regulation and not a statute, the custom statute has to trump it. That's correct, Your Honor. We have cited cases, the Hoffman Plastics case, for example. There's the SoC versus Califano case out of the 10th Circuit that recognized that when a regulation infringes upon a statutory scheme, the regulation cannot be enforced in a way that violates that statute. And that's Amex's position here, that that's exactly what's happening. And what if the statute had said the standard is nine, but in areas where air quality reaches X and Y, and something else, then it goes down to seven for 90 days or something like that. Let's say that we're actually in the statute. Then I think, Your Honor, that the analysis would be different. That would be closer to a case like Epic Systems, where the same body, meaning Congress, has said something clearly. And the courts are not meant to assume that Congress would have impliedly repealed itself or imposed limitations. But here we have a regulation, and that's different. No, we definitely have a regulation, but we also have an express statement from Congress that basically says it's nine, but we know that this is not going to be the right number under all circumstances. And we recognize that there will be places and times when that's not satisfactory. And so we want the EPA just to have special rules for those circumstances. I mean, doesn't that express Congress's intent that it shouldn't always be nine, and it would need to be lower sometimes? That's correct, Your Honor. But we're not contesting that an RVP of seven is appropriate for the entire eight-county area. It's not our position that Michigan could not have put this in their SIP and gotten approved. The issue is where MDARD and the EPA are trying to enforce it specifically against Amex, which has this whole other construct of U.S. customs law imposed. And without a specific statement from Congress that the customs law should not apply here because of the 7.0 limit, we have to give deference to Congress's intent. And here Congress's clear intent is that a duty-free store like Amex can sell any merchandise subject to duty of every description. Well, your time is up. You have your rebuttal. I'm sorry, judges. Do you have any further questions right now? Thank you, Your Honor. Good afternoon. Good afternoon. May it please the court. Elizabeth Morisot from the Michigan Department of the Attorney General on behalf of the Michigan Department of Agriculture Rural Development, Director Doug McDowell. Let's just jump into the heart of the matter. Gasoline is different from every other product that Amex sells. They are lucky to be able to sell it duty-free. It is different for two reasons. One, it is not sold in a sealed container. That means that every time it is transferred from one tank to another, it releases air pollution subject to regulation. That's true when its supplier dispenses gasoline into the tank farm it owns in Taylor. That's true when Amex or various carriers that it employs transfers the gasoline from Taylor to its duty-free store in Detroit. And it's true again when Amex dispenses gasoline from the duty-free store to its customers' fuel tanks in Detroit in Wayne County. Another thing is different about gasoline that's pretty important. Consumers buy it to fuel their personal vehicles. It must be used and consumed in the United States before they can actually leave the country. They use it when they turn on their cars, when they idle their vehicles waiting in line, and when they finally drive to and across the Ambassador Bridge. It takes them to Canada. They do not take it to Canada. Judge White. I want to ask you, so what effect does this Court of International Trade decision, I think that case seemed to would have not bought into your second point. Because I think in that case, didn't the court recognize that this was a duty-free good under the customs laws, notwithstanding that it was being consumed in potentially in this country? So it was determined to be a duty-free good, and MDARD Director McDowell does not contest that Amex is entitled to sell gasoline duty-free. But the duty-free law and the environmental law are on parallel tracks. They do not conflict with each other. The duty-free law relates to what merchandise may be entered into a warehouse and then sold from that warehouse. The environmental law speaks to, it controls ozone pollution by limiting the release of air pollution that comes when you transfer gasoline from one tank into another. It is not about the scale. Do you have anything in the administrative record where EPA has considered the customs laws in promulgating this regulation? Well, we actually have something more recent that is not in the administrative record because EPA apparently just revised and streamlined their fuel regulations. This actually occurred in December of 2020. So they revised the fuel regulations in the preamble. They explained there's a few changes in terms of how things were treated, but that there was significant regulatory tax change. And so those new fuel regulations include a section titled exemption for exports of fuels, fuel additives, and regulated blend stocks. And the last sentence of that section, which is 40 CFR 1090.645B reads, quote, any fuel dispensed from a retail outlet within the geographic boundaries of the United States is not exempt under this section, end quote. And in the preamble, EPA had a table listing the various state requirements that have been incorporated into SIPs, including Michigan's seven pound gas requirement. So EPA is unquestionably of the opinion that the vapor pressure standard applies to gasoline that is dispensed from a retail outlet into consumer's vehicles. And that is what the summer fuel law is. So there's really no question here. Now, I'd like to go to this idea of conflict. Now, Judge Bush, in his concurring opinion, already addressed the fact that there is no conflict between the customs law and the summer fuel law in the context of doing a conflict preemption analysis. And even if all we look at is the duty-free law, we can see that that's true. So according to customs, seven pound gasoline is the same merchandise type as nine pound gasoline. So the customs agency issues a harmonized tariff schedule that lists every type of merchandise that is quote, unquote, subject to duty. And it quantifies that duty for each of those merchandise types. The HST includes gasoline, but it does not differentiate by various vapor pressure standards. So under customs law, establishing a seven pound pressure standard during the summer does not limit the type of merchandise that can be entered into Amex's warehouse. Now, I had an example from the HST that I was planning to cater to Judge Bush, but based on Judge Griffin's prior question, I'd also like to point out to Judge Griffin and Judge White obviously as well, that the HST in one of its many chapters also lists types of whiskey and it differentiates them into types. One of the types of whiskey is bourbon, but it does not distinguish further to straight bourbon, nor does it distinguish to Kentucky straight. Now, that doesn't mean they're not different in the real world. The court can certainly take judicial notice of the fact that whiskey and Kentucky straight are different. However, for the purposes of customs law, it is the same type of merchandise. And so there is no problem here. Now, Judge White in one of her questions was talking about statutes and regulations. Now, Amex's focus on statutes and regulations is obviously a red herring because if we go to the Clean Air Act, which Judge White referenced in a question specifically, 42 USC 7545H, which relates to the reed vapor pressure requirements, there is a prohibition against selling. It orders the administrator of the EPA to develop regulations prohibiting the sale of anything except nine pound gas, except in areas where it might be necessary to have a more stringent vapor pressure standard. So we are not talking about one federal law and one federal regulation. We are talking very clearly about two federal laws. And if the court would like to get into the question of recency, the duty-free warehousing laws what came out from Congress in 1988, whereas the Clean Air Act was amended in 1990. Now, repeal by implication is disfavored and MDARD director is not putting forth the argument that the 1990 amendment somehow repealed by implication part of the warehouse law. There's, we're simply saying that there is not a conflict whatsoever. And if there were a conflict, would you agree that a statute would trump a regulation? In theory, if there is a conflict between a statute and a regulation the statute would trump the regulation. But what we do not, we simply don't have a conflict here. Amex has complied with the requirements every year since 2013. They complied with it this year. Obviously this year was different because of the pandemic but at the point when the RVP pressure standard was applied to Amex, they at least attempted to comply with it. They did have an issue of non-compliance but it wasn't intentional and they are able to comply with the RVP standard. There's another point. Amex simply doesn't make a plausible argument that what they sell is Canadian gasoline. Their CEO, Dan Stamper testified that no one has ever inspected the gasoline from a Canadian authority. He didn't put forth any explanation as to how a Canadian regulator would have the authority to come onto American soil to inspect our gasoline provision. And in fact, if you look at any of the pumps that are at Amex's duty-free stores every single one of them has a little sticker provided by MDARD that says when it was last inspected and has a 1-800 number to call MDARD if there's any problems. And as was discussed previously when there was a point when Amex had too much water vapor in its tanks and caused its customers' vehicles to break down on the bridge it was MDARD who was responsible for dealing with that not any Canadian gasoline regulatory authority. Council, do you know what the standard is in Canada? We were asking your opposing council as to what the RVP level is in Canada. Do you know? My understanding is that it changes during the year. But that it does not drop as low as seven pounds. The thing that's unique about gasoline compared to any other product is that its ability to perform changes in relation to the ambient temperature. So in the summer, particularly in urban areas where ozone pollution is a problem you wanna have that less volatile gasoline so that you're not putting out those pollutants that can then form ozone, which is a problem. But in the winter, when it's very cold you need to have higher pressure gasoline because otherwise your car won't start at all. And the court can certainly take judicial notice of the fact that although Michigan is cold Canada is colder. There was another point that Amex had made about this hearsay report that is supposedly demonstrates that none of the gasoline that is sold by Amex is actually used until the customer is on the other side of the border. So there's two issues with that. One is that the MDARD regulation if we're gonna call it the summer, let's call it the summer fuel law. The summer fuel law is not based on sale. The summer fuel law is based on dispensing and transferring because its focus is dealing with the air pollution that is released when gasoline is transferred from one tank to another. It is not just about selling a particular product. And so regardless of how much gasoline is in the tank of a certain number of a random selection of consumers the volatile organic compounds are emitted when Amex receives its gasoline to its tank farm in Taylor again, when it transfers it to the duty-free store. And then again, when it goes into the customer's fuel tanks it's not solely about the gasoline when it's burned. It's also about the gasoline when it's transferred from one tank to another. And this is another thing that's very different about any of the other products. So Amex sells alcohol at its duty-free stores and they sell alcohol to minors who could not purchase alcohol in Michigan who can purchase alcohol in Canada and who can bring unopened bottles of alcohol with them across the border into Canada. But the fact that they can sell closed containers of alcohol does not mean that they can open up a duty-free martini bar, let's say. And they couldn't say 18 year olds please come onto our premises, drink from our duty-free keg and then cross the border because what they would be doing is condoning conduct that is not allowed on American soil which is providing alcohol to 18 year olds 19 year olds and 20 year olds. The only reason that they're allowed to sell the alcohol to the 18 year olds, 19 and 20 year olds in the first place is because it's contained in a sealed bottle and it's provided to them at that checkpoint. It's considered to be under the supervision of customs and then they are allowed to bring it with them when they go to Canada. They wouldn't be able to sell gas. They wouldn't be able to sell alcohol to 18 year olds if as part of the sales process you had to open the bottle and take a sip because- Those regs or those rules that you just went through where are they found? There is not a specific rule that says they may sell alcohol to 18 year olds. They do it and I think the understanding is that they're going to make sure that those 18 year olds don't drink on their premises and that those 18 year olds go to Canada. Now I don't- There's not information on the record as to when the 18 year old actually would receive it. This is far afield. This is very far afield of the actual issues before this court. But I think that speaks to how fascinating the topic is as opposed to how complex the case is. This is a very simple case. You're not allowed- Couldn't Congress have just made clear that any goods that are subject to duty that they're also subject to federal regulations if Congress wanted to? There's a- And I don't have the citation in front of me but there is a sentence in the customs law that does say to the effect that there's a license that's required from the state. You have to obtain that. And frankly, can Congress speak clearer? Congress can always speak clearer but from the customs law and from the 1990 amendments it is very clear that you are allowed to enter types of merchandise that are subject to duty into a warehouse. And it is also clear that you are not allowed to transfer, dispense, sale or offer for sale volatile gasoline in areas of the country that have an ozone problem. And so that's- You're referring to the EPA rigs? No, I'm referring to the Clean Air Act, Your Honor. Specifically the section of the Clean Air Act that you referenced in your first opinion and in your earlier question to opposing counsel appeared to reference as well which is 42 USC 7545H. Judge Griffin, would you mind if I ask one more question on hypothetical? Go ahead, please. This is just something that came to mind. I assume Amex is a unique duty-free store. There's not another gas station on the border between the U.S. and Canada. Is that correct? That is that- I believe so, Your Honor. Our gas station is duty-free like this. Okay. And I assume there's not one on the Canadian side either? I do not know, Your Honor. Okay. Well, suppose there were one. Would it be the position that- What would your position be? Suppose you had a Canadian one across the border from this one. Would the Canadian duty-free store have to comply with American law in that instance? No, because they would be located in Ontario, not in Wayne County, not in the United States. So the Michigan SIP is very location-specific. If your feet are in Wayne County, you may not dispense, transfer, sale, or offer for sale low-pressure gasoline. There's other SIPs that are different. El Paso County, which is another border region, their SIP, instead of saying you can't transfer or dispense, they focus on using it. So it would be a different question if you're talking about a border store on the other side of El Paso. But on the other side of Wayne County, there is no authority for Michigan or for the United States to tell a Canadian gasoline retailer what kind of gasoline they may dispense into a vehicle. So you don't believe there is any authority under the U.S. Customs laws for imposing a requirement on goods coming to this country to comply with the law of the jurisdiction where the goods are coming into? Well, my question wasn't focused on that. My response was focused on specifically the summer fuel law. And the summer fuel law is not only about the sale. It's about transferring gasoline from one tank into another tank. And the location of those tanks is where the authority hook of the summer fuel law is. So if there was a similar law that Ontario had, they could not apply it in Wayne County. And Wayne County could not, well, frankly, the EPA could not bootstrap its authority through customs law onto Ontario because the premise of the summer fuel law is wherever your feet are, if they're in Wayne County, you cannot dispense low pressure, you cannot disperse high pressure gasoline during the summer. Okay, thank you. All right, any further questions? Judge White, Judge Bush? Counsel, we spent most of the time asking questions. I'll give you another minute just to wrap it up if you want. This is really a clear cut case. There is no conflict between the two requirements. The discussion about whether it's a regulation or whether it's a law is a red herring. On one hand, Michigan and the United States Environmental Protection Agency have authority provided by Congress under the Clean Air Act to control dispensing, transferring sale of gasoline because the process of doing so releases pollution into the air. And the purpose of the Clean Air Act is to bring the states into compliance with healthy levels of air based on what the EPA determines is healthy. And so they are allowed to do that by limiting vapor pressure standards for gasoline. On the other hand, the duty-free requirements create a legal fiction that benefits domestic commerce by pretending that it's foreign commerce so that it can occur without imposing taxes on it. And so we would ask this court to uphold the district court's determination that it should dismiss Amex's first amended complaint with prejudice. Amex can sell gasoline duty-free, but they must sell low pressure gasoline during the summer. Thank you. Thank you very much. All right. Ms. Mintz, you have three minutes of rebuttal. We can't hear you. My apologies. There you go. Thank you, Your Honor. So counsel for MDARD referenced gasoline is being sold in a sealed container. And the problem with that example that the district court used as well is that under MDARD's regulations, which have been incorporated into the SIP, specifically says a person shall not knowingly sell, dispense, or offer for sale gasoline other than unless it meets the requirements including the summer fuel requirements. So by this specific term, it's the conduct that MDARD is trying to regulate is not just the emissions. It's the actual sale. And that's where the conflict is with the statute from U.S. about customs because that is the only way that, the only language that can regulate the specific act of sale. This is not a case about the conduct. It's not about water in the tanks, in the underground tanks. It's not about even the specific mechanism of refueling into a car or fueling from a truck into an underground tank. It is a specific regulation by MDARD and the EPA on the type of products that can be sold. And that is where the conflict is. As Ms. Marceau mentioned, there is a concession. She has conceded that a statute would trump a regulation if there's a conflict. And so from that, we start on the same point. And here, there is simply no way to read the regulation from MDARD and EPA in a way that does not somehow restrict the goods that Amex can sell. Would you agree that we have an obligation to at least try to reconcile the statute with the regulations if we can? There's certainly authority that says that you shouldn't go out of your way to find a conflict. But the issue here is that there is simply no way to reconcile them. There is no way to say Amex can sell any good subject to duty without these few exceptions, but not this, this, and this. Why is not the good gasoline as opposed to the vapor pressure of the gasoline? Why isn't the gasoline the merchandise? Well, Your Honor, because the statute says merchandise subject to description, and merchandise is then defined as any good of every description. So when you have words like any and every in a statute, that has to mean something. There are numerous Supreme Court cases that we've cited that say any means any. There is no room there for limitations that a court would want to impose. And that includes on the type of good. There, again, in our briefs, there are numerous cases that talk about any not allowing any type of restriction of any sort. Unless Your Honors have further questions, we would ask that Your Honors reverse the district court and remand. Any further questions, Judge White? Yeah, I'm sorry. So basically, you could sell all sorts of goods that don't meet safety standards as long as the safety standards are promulgated by rule. As long as the safety standards don't make the good not able to be dutiable and not illegal in Canada. So we could not sell cribs that have been deemed illegal for some reason in Canada duty-free because they would not be legal for use in Canada. We could also not sell... I'm sorry. But let's talk about... Well, first of all, this notion that you can't sell something that's not legal in Canada is... It may be a practical reality, but that's not what the law says. You have to notify people, that's all. And so let's say there are federal regulations, not statutes, federal regulations on... You want to use a crib on what the crib needs to have. And you're saying that you could sell that because cribs are legal and the restrictions are by regulation, not by statute, right? That's correct, Your Honor, as long as it would be legal for use in Canada. Okay, well... And to your point... That... To your point, Your Honor, Congress could be clearer and say, and must comply with other federal regulations as to safety and health and welfare, but Congress didn't do so. And it is certainly within Congress's right after this case to go back and amend its statute. That happens routinely when Congress thinks that... Realize it didn't actually say what it meant to say, but on the language we have here, the unambiguous language is that there are only three restrictions on the types of goods that can be sold. It has to be dutiable, it can't be a perishable item, and it can't be an explosive other than a firecracker. And, well, there's a third, isn't there? That it can only sell goods that are subject to duty, meaning the goods from foreign sources are from a foreign source that are not illegal under federal law. Yes, that's the subject to duty part. The three exceptions are subject to duty, not a perishable, and not an explosive other than a firecracker. Let me ask you a question about location of a duty-free store. Is there a reg saying or a law saying where it has to be located within a certain distance from a border? Yes, Your Honor. I would again point you to 19 U.S.C. 1555 and the accompanying regulations, which are 19 CFR 19.1 and .2, and those have specific limits about where duty-free stores can be located. They can either be in airports or they can be in border stores like annexes that have to be within 25 miles of the border and beyond the customs exit point, such that someone could not turn around before going into Canada. And annexes gas station complies with all those rules and is located within a legal area that is highly regulated by U.S. Customs. And when the traveler goes into Canada, I don't know what the current, I haven't been to Canada in a while, but presumably you have to go through some sort of a checkpoint when you go into Canada, don't you? Yes, that's correct. Okay, where you have to report your goods that you're bringing in. I believe that's correct, your honor. Okay, any further questions? All right, seeing none. Thank you very much, counsel, for your argument. The case will be submitted and you may adjourn the court. Yes, your honor. This honorable court is now adjourned.